## R. S. BOWEN ET AL. v. LANSING WAGON WORKS.

### No. 607.—Decided January 13, 1898.

**1. Sale—Lien—Reservation of Title—Statute Construed.**

Sec. 17 of assignment law of 1879 (Rev. Stats., art. 2584) does not by its terms apply to or make void a reservation by the vendor until payment of the purchase price, of his title to merchandise which was to be exposed for sale by the vendee,— such transaction not being "a form of lien attempted to be given by the owner," within the meaning of that statute. (P. 390.)

**2. Same.**

The subsequent enactment in 1885 of the present articles 2549, 3327, Rev. Stats., 1895 (making such reservation a chattel mortgage), did not extend the provisions of article 2584 so as to make it include such a transaction. (P. 390.)

**3. Same—Chattel Mortgage—Failure to Register—Trust Deed—Accepting Creditors.**

Rev. Stats., arts. 3327, 3328, giving such reservation of title the effect of a chattel mortgage subject to registration, do not make such lien, though unregistered, void as against creditors of such vendee who have acquired no rights in the property other than by acceptance of a deed of trust by the vendee conveying the mortgaged property for their benefit. (P. 390.)

**4. Same.**

To protect such accepting creditors they must have paid a valuable consideration for their mortgage lien at the time of its execution, in addition to their pre-existing debts. The fact that they are lien creditors for a pre-existing debt will not suffice. (Pp. 390, 391.)

**5. Same—Creditors.**

The term "creditors" as used in art. 3327 has the same meaning as in art. 3328, and includes all persons whose claims are, upon certain conditions, charged by law as specific liens upon certain property, such as holders of attachment, execution, judgment, landlords' and mechanics' liens and no others. (Pp. 390, 391.)

**6. Same—Purchasers—Consideration.**

The word "purchasers" in art. 3327, as in art. 3328, includes all persons who have fixed their liens by contract or act of the parties, and embraces holders of claims secured by trust deed or mortgage, who, in order to bring themselves within the terms of the statute, must show that they hold for a consideration advanced without notice of the unrecorded lien. (P. 391.)

**7. Same—Pre-Existing Debt.**

A pre-existing debt where there is no extension of time is not such a consideration. (P. 391.)

QUESTIONS CERTIFIED from Court of Civil Appeals for Third District, in an appeal from McLennan County.

*Sims & Snodgrass*, for appellant, B. H. Pittman.—The court erred in not holding the contract or mortgage between plaintiff, Lansing Wagon Works, and defendant, R. S. Bowen, claimed by plaintiff to create a lien upon the wagons herein in question and upon which it sought in its petition to foreclose a lien, to be fraudulent and void as to said contract and as to said lien, as to the other creditors of said R. S. Bowen and beneficiaries in the deed of trust executed by said R. S. Bowen on September 14, 1896, upon the property in question, represented by this defendant as trustees for their benefit, and who accepted the said deed of trust so made by said Bowen, under which this defendant claims said property as set out in his answer herein. The uncontradicted evidence and proof before the court being and showing that said contract or mortgage under and by virtue of which plaintiffs claim a lien upon said wagons, was never deposited with or filed in the office of the County Clerk of McLennan County, Texas, same being the county of said Bowen's residence, and that said wagons remained in the exclusive possession of said Bowen, and with other goods, wares and merchandise were by said Bowen, as a retail merchant, daily exposed to sale in parcels and offered for sale in regular course of business, and that it was contemplated between plaintiff and said Bowen that said Bowen should remain in possession of said goods and control of the business by sale of the goods at retail. Such being the case, said contract or mortgage or lien claimed by plaintiff is fraudulent and void under the Statutes of Fraud of this State, as against this defendant as trustee and the beneficiaries he represents. Rev. Stats., 1895, art. 2548; Peiser v. Peticolas, 50 Texas, 644; Bank v. Lovenberg, 63 Texas, 509; Duncan v. Taylor, 63 Texas, 646; Wilber v. Kray, 11 S. W. Rep., 540.

The reservation of title by appellee in its sale of the wagons in controversy to R. S. Bowen, by the terms of the statute, was in law a chattel mortgage only. Rev. Stats., art. 3327, Harling v. Creech, 31 S. W. Rep., 357; 88 Texas, 300.

Plaintiff's mortgage being unregistered, was void as to all creditors of R. S. Bowen under the express terms of the statute, and creditors under the statute, included all creditors who have acquired liens upon the property by contract as well as by judicial process; and the mortgage by R. S. Bowen to Jennings as trustee, and his substitute, having been

accepted by the trustee, and the creditors for whose benefit it was given, and they being bona fide creditors of said Bowen, and said trust deed having been duly deposited and recorded and the trustee having taken possession of said goods, the lien of said deed of trust was in law superior to plaintiff's unregistered chattel mortgage. Rev. Stats., 1895, arts. 3327, 3328; Brothers v. Mundel, 60 Texas, 246; Parlin, Orendorff Co. v. Harrell, 27 S. W. Rep., 1084; Furniture Co. v. Sherman Hotel Co.; 16 S. W. Rep., 809; Butler v. Sanger, 23 S. W. Rep., 487; Smelser v. Baker, 29 S. W. Rep., 377.

*J. B Scarborough*, for appellee.—The lien plaintiff held, which was in law a chattel mortgage, was not void because not recorded. Avery v. Mansur & Co., 37 S. W. Rep., 466; 81 Texas, 99; 81 Texas, 135; 63 Texas, 512.

In order to avoid plaintiff's lien, defendant Pitman and the beneficiaries under the trust deed, must come under one of two classes named in the chattel mortgage, towit: "Creditors" or "purchasers or mortgagees in good faith." Rev. Stats., art. 3190a. That they are not "creditors" within the meaning of the statute because they had fixed no lien by judicial process, has been repeatedly decided by our Supreme Court. Overstreet v. Manning, 67 Texas, 663; 81 Texas, 141; 60 Texas, 246; 27 S. W. Rep., 1086; 37 S. W. Rep., 466.

DENMAN, ASSOCIATE JUSTICE.—In this cause the Court of Civil Appeals of the Third Supreme Judicial District has certified to us the following questions and explanatory statement:

"This suit was brought October 6, 1896, by Lansing Wagon Works, a corporation doing business in Lansing, Michigan, against appellants, R. S. Bowen and B. H. Pittman, on certain promissory notes executed by Bowen to the company and to foreclose a lien on certain wagons.

"There was an agreement between plaintiff and defendant Bowen, as shown by letter of the plaintiff to defendant, dated February 22, 1896, endorsed by defendant March 2, 1896, by which the latter accepted the terms of the contract that the company would ship to defendant at Waco, Texas, wagons, and that all wagons so shipped were to remain the property of plaintiff, until he, Bowen, settled for them, as follows: Upon the arrival of the goods, defendant, Bowen, was to give plaintiff his note for the purchase price of the wagons, and when he sold any of the wagons, he was to forward to plaintiff his customers' notes, to be held by it as collateral security for the purchase price. The notes sued on were given by defendant for wagons shipped to him by plaintiff, pursuant to the foregoing agreement, and the wagons upon which plaintiff sought to foreclose the lien were wagons shipped under the agreement. Not having been sold by Bowen, these wagons had not been settled for as provided in the agreement, and they were consequently the property of the plaintiff. It was agreed that the amount due at the time of trial

on notes of defendant Bowen to plaintiff was $984 principal and interest, and $98.40 attorney's fees, for which the suit was brought. The contract between plaintiff and defendant Bowen was never authenticated, deposited with the clerk, or registered as a chattel mortgage.

"Bowen was engaged in the business of buying and selling by retail, wagons, buggies, surreys, phaetons, harness, cultivators, plows, and a general implement business in the City of Waco, McLennan County, and was so engaged when he procured the wagons in question in this suit; and it was understood between him and plaintiff, at the time the contract between them was made and at the time he got possession of the wagons, that they were to be by defendant Bowen daily exposed for sale in the said business at retail and to sell them in the usual course of business; and he did keep them in his stock, and daily exposed and offered them for sale by retail in Waco, from the time he received them until they were turned over to the trustee under the trust deed hereinafter mentioned. The wagons involved in this suit were wagons delivered to Bowen under his contract with plaintiff, and these he exposed for sale, as stated, with other stock in trade. Neither the trustees nor the beneficiaries under the trust deed had any notice of plaintiff's rights under the contract until this suit was brought.

"On the 14th day of September, 1896, Bowen made, executed and delivered a certain deed of trust to Perry Jennings, as trustee, of McLennan County, conveying all the property in question in this suit upon which plaintiff seeks to establish and foreclose a lien, as well as other property, for the purpose of securing certain creditors named in Class "A" in the payment of their pre-existing debts, due and owing them by Bowen, and also in Class "B", the creditors in Class "A" to be preferred to those named in Class "B"; providing that the trustee should sell the property and pay the creditors named, and stipulating that when the debts were paid, if there was sufficient of the property to do so and all expenses of executing the trust, the residue of the same, or its proceeds, should be delivered to him, Bowen. Perry Jennings immediately, on the same day, took possession of the property mentioned in the instrument and proceeded to execute the same immediately, and the creditors beneficiary as named in Class "A", except one, before suit duly accepted the benefits of the deed; after which Jennings refused longer to act as trustee and resigned. Whereupon the County Judge of McLennan County, as provided in the deed, duly appointed B. H. Pittman, of McLennan County, trustee to execute the trust, as substitute trustee; and he thereupon immediately took possession of the goods mortgaged by the trust deed, and proceeded to execute and carry out its provisions.

"On the day of its execution the deed of trust was deposited with the County Clerk, and filed and registered in the office of the County Clerk of McLennan County, Texas, as directed by law in case of filing, depositing and registering chattel mortgages.

"It was proved that the goods mortgaged by the deed of trust were

not of value more than sufficient to pay the expenses necessary to be expended in carrying out the trust and to pay the creditors who had accepted its terms as named in Class "A". The wagons mentioned in plaintiff's petition were, at the time the suit was filed, in the possession of the trustee Pittman, in Waco, and were by him by consent of plaintiff sold, and the proceeds of the sale, $426, were held by him subject to the decision in this case.

"The court below, trying the case without a jury, found the facts substantially as stated above, and decided that the legal effect of the contract between plaintiff and defendant Bowen was to create a lien in favor of plaintiff against the wagons in the hands of Bowen, and that inasmuch as he could not convey a greater right thereto than he possessed, and that the conveyance made by him by the trust deed was subject to plaintiff's lien; that as neither the trustee, nor the beneficiaries under the deed of trust had paid any consideration therefor, but simply accepted the same as security for pre-existing debts, surrendering no rights which they therefore held at the time of the conveyance, the rights of the parties thereunder were subject to plaintiff's lien. The court ordered judgment for plaintiff for the amount of its debt, $1082.40, and that Pittman pay into the registry of the court, for the benefit of plaintiff, the proceeds of the sales made by him, the $426 which was directed to be paid to plaintiff. Judgment was accordingly so rendered, and the defendants have appealed.

"We propound the following questions to the Supreme Court, arising in this cause, which is now pending in this court:

"Does section 17 of the assignment law of 1879, declaring that 'every mortgage, deed of trust, or other form of lien, attempted to be given by the owner of any stock of goods, wares or merchandise, daily exposed to sale in parcels in the regular course of business of such merchandise and contemplating a continuance of possession of said goods, and control of said business by sale of said goods by said owner shall be deemed fraudulent and void,' apply to the lien asserted by the plaintiff, and should it be enforced in this case? Sayles' Rev. Stats., 65; Rev. Stats., 1895, art. 2548.

"If the court holds that the article of the statute referred to does not apply, then in view of the fact that plaintiff did not have its contract deposited, filed and registered, as in case of chattel mortgages, as required by statute (Sayles' Rev. Stats., 3190a; Rev. Stats., 1895, art. 3327), should the trust deed securing a lien to the creditors named therein before suit, prevail over the contract of plaintiff, so far as to enforce the rights of the lien creditors accepting under the deed of trust, there being no notice to them or the trustees of plaintiff's claim at the time the deed of trust was executed and accepted? To protect such creditors, must they have paid a valuable consideration for their mortgage lien at the time of its execution, in addition to their pre-existing debts? Or does the fact that they are lien creditors to secure pre-existing debts, give them protection against plaintiff's claim, they having no

legal notice of the same at the time when or before their lien was created and duly deposited, filed and registered?"

At the time of and after the passage of sec. 17 of the assignment law of 1879, above quoted (Rev. Stats., 1895, art. 2548), the transaction in this case would not have been considered a "mortgage, deed of trust or other form of lien attempted to be given by the owner," within its purview. We are of the opinion that the language and scope of this severe provision was not intended, by the subsequent enactment in 1885 of what is now articles 2549 and 3327, Rev. Stats., 1895, which reads as follows: "All reservations of the title to or property in chattels as security for the purchase money thereof shall be held to be chattel mortgages, and shall, when possession is delivered to the vendee, be void as to creditors and bona fide purchasers, unless such reservations be in writing and registered as required of chattel mortgages; provided, that nothing in this article shall be construed to contravene the landlord and tenants act," to be extended so as to include the transaction before us which is a reservation by the vendor and not any "form of lien attempted to be given by the owner." We therefore answer the first question certified in the negative, without passing upon the question whether a mortgage given upon specific articles which could not be reasonably held to be the "stock of goods" is affected by said sec. 17.

In order to answer the second group of questions above certified we must determine whether the parties secured by the trust deed were "creditors" within the meaning of art. 3327 above quoted, which must be construed in connection with art. 3328, which reads as follows: "Every chattel mortgage, deed of trust or other instrument of writing intended to operate as a mortgage of or lien upon personal property which shall not be accompanied by an immediate delivery, and be followed by an actual and continued change of possession of the property mortgaged or pledged by such instrument, shall be absolutely void as against the creditors of the mortgagor or person making the same, and as against subsequent purchasers and mortgagees or lienholders in good faith, unless such instrument or a true copy thereof shall be forthwith deposited with and filed in the office of the county clerk of the county where the property shall then be situated, or if the mortgagor or person making the same be a resident of this State, then of the county of which he shall at the time be a resident." This article divides the persons who are to be protected against the unrecorded instrument into two classes, (1) "creditors" and (2) "subsequent purchasers and mortgagees or lienholders in good faith." "Creditors" as here used has been generally held to mean persons whose claims have been fixed by some legal process as liens upon the property (Brothers v. Mundell, 60 Texas, 240; Overstreet v. Manning, 67 Texas, 657), and has been by this court held to include a landlord whose lien was fixed by statute. Furniture Co. v. Hotel Co., 81 Texas, 135. The logic of these decisions would seem to include within the term "creditors" all persons whose claims are, upon certain conditions, charged by law as specific liens upon certain

property, such as holders of attachment, execution, judgment, landlord and mechanics' liens, and to exclude therefrom all others. Therefore we are of opinion that the holders of claims secured by the trust deed in this case are not to be classed as "creditors."

The second class of persons protected by the statute as above stated are "subsequent purchasers and mortgagees or lienholders in good faith." The word "purchasers" has been generally held to include mortgagees and holders of claims secured by trust deed, and while this holding was originally probably based upon the ground that by such instruments in other states the legal title passed, still we are of opinion that when our statute used the same well understood words it was intended that it should receive the same construction as elsewhere. This view is strengthened by the fact that the statute adds the words "mortgagees or lienholders," which insures such construction. As said in Overstreet v. Manning, 67 Texas, 663, the statute is here referring to persons who have fixed their liens by "contract or act of the parties." We are of opinion that the word "creditors" in article 3327 means the same as in article 3328, and that the word "purchasers" in the first includes the same persons as "purchasers, etc.," in the second, and therefore that the holders of the claims secured by the trust deed in this case are included within this second class of persons, and that in order to bring themselves within its terms they must show that they hold "bona fide" or "in good faith," and that in order to do so they must show a consideration advanced and that they had no notice of the unrecorded lien. It is well settled that a pre-existing debt, where there is no extension of time, is not a consideration. Overstreet v. Manning, 67 Texas, 663; Cook v. Parham & Blunt, 63 Ala., 456; Port v. Embree, 54 Iowa, 14. We therefore answer the first of said group of questions certified in the negative, the second in the affirmative and the third in the negative.