### TRANS-CONTINENTAL FREIGHT CO. v. PACKARD NORTH TEXAS MOTOR CO. (No. 2185.)

Court of Civil Appeals of Texas. El Paso. Nov. 22, 1928.

Crane & Crane, of Dallas, for appellant.

Leachman & Gardere, of Dallas, for appellee.

PELPHREY, C. J. On February 15, 1924, Emil Velazco purchased from appellee one Marmon Chummy Roadster automobile, motor No. 821081, and gave in part payment therefor 11 notes in the sum of $60.61 each; the first note being due and payable on the 15th day of April, 1924, and one due on the 15th day of each month thereafter until all notes should be paid. Simultaneously Velazco also executed a chattel mortgage on said car in favor of appellee, and the same was duly filed in the office of the county clerk of Dallas county, Tex. Velazco failed to pay the first note on its due date, and appellee declared the whole series due, and placed the notes in the hands of an attorney for collection. On April 21, 1924, Velazco delivered the car to appellant at Chicago, Ill., with directions to ship same to him at Dallas, Tex., agreeing to pay appellant for its services rendered in the shipping as well as any freight charges advanced by it. Appellant, pursuant to Velazco's directions, shipped the automobile to its agent, Interstate Forwarding Company, at Dallas, Tex., with instructions to deliver the car to Velazco upon the payment of its charges amounting to $210.66.

While the car was in the possession of the Interstate Forwarding Company, it was sequestered by appellee.

Later the Packard North Texas Motor Company applied for a sale of the car on the ground that same was becoming greatly depreciated in value. The application was granted, and the appellee purchased the car for a nominal sum, but agreed with appellant that, in the event the court should later hold appellant's lien superior to that of appellee, judgment might be rendered against it for the sum of $210.

Appellee filed suit against Velazco and the Interstate Forwarding Company on the notes and to foreclose its lien thereon, alleging that the Interstate Forwarding Company was in possession of the car.

Appellant intervened, setting up its claim for $210.66, praying for a judgment therefor and a foreclosure of its lien, that the car be sold, and the proceeds be applied to the payment of it debt before appellee be allowed to participate therein.

Velazco was cited by publication but made no appearance, and the Interstate Forwarding Company, having filed a disclaimer, was dismissed from the suit.

The following facts were agreed to by the parties as provided at a trial of the cause:

"The parties agree that at the time the automobile described in plaintiff's petition was taken to Chicago, there was a valid mortgage duly recorded and in force, as alleged, and described in plaintiff's petition.

"That the said automobile was taken to Chicago by the owner, Emil Velazco, defendant in this suit, without the knowledge or consent of the mortgagee, Packard North Texas Motor Company, plaintiff herein, and was by said Velazco delivered to intervener, Trans-Continental Freight Company, with request that said car be shipped to said Velazco as consignee at Dallas, Texas, care of the plaintiff, Packard North Texas Motor Company, said Velazco agreeing to pay intervener the charges necessary for the shipment of said automobile to Dallas, Texas; and that said charge amounted to the sum of two hundred ten ($210.00) dollars, and were reasonable and necessary.

"That intervener herein, Trans-Continental Freight Company, had no actual notice of the existence of the mortgage described in plaintiff's petition at the time it accepted said automobile for shipment and forwarded same to Dallas, Texas.

"That said automobile was shipped by intervener to Interstate Forwarding Company at Dallas, Texas, defendant herein, as agent for intervener, and that while in the hands of said Interstate Forwarding Company, said automobile was sequestered by plaintiff and disposed of under conditions and orders as shown by the agreement of attorneys and the records of this cause."

Upon a trial before the court a judgment in rem was rendered against Velazco in favor of appellee for the sum of $1,004.72, on the notes and a foreclosure of the mortgage on the automobile.

In the judgment the court found that Velazco was indebted to appellant in the sum of $210, which was secured by a lien upon the automobile in controversy, but decreed that appellant take nothing as against appellee and that appellant be taxed with costs of the intervention.

The Trans-Continental Freight Company has appealed to this court from said judgment.

## Opinion.

Appellant lays down three propositions as a basis for its claim for reversal, viz.: (1) That it being undisputed that appellant had no actual notice of the mortgage of appellee at the time of receiving the automobile, and the court having found the existence of a lien in its favor for the charges, the court erred in holding that appellee's was the superior lien; (2) the registration of appellee's lien was not notice to appellant of the existence of the lien of appellant, and the court erred in not holding appellant's lien superior to

that of appellee, because the courts of Texas have announced that the registration of a chattel mortgage can have no effect beyond the territorial limits of the state within which it has been registered; and (3) that, appellant's lien being superior to appellee's, the court erred in not rendering judgment in its favor as was agreed between the parties should be done in case appellant's lien was superior.

The general rule is that a carrier's lien is inferior to the right of a mortgage of which the carrier has actual or constructive knowledge, and it appears to us that the same rule will apply in the present case.

Applying that doctrine, we must decide whether appellant in the present case had either actual or constructive knowledge of the existence of appellee's lien.

That it had no actual knowledge is shown by the agreed statement of facts, consequently there remains only the question of constructive knowledge. In other words, did the filing for record in Dallas county, Tex., of the chattel mortgage of appellee serve as constructive notice to appellant in Chicago, Ill., of its existence? In Crosby v. Huston, 1 Tex. 203 (see page 238), the Supreme Court used the following language: "But, whatever may have been the effect of registration in Mississippi, it cannot be extended beyond the territorial limits of the state. The operation of such a municipal regulation is local, and cannot affect property in a foreign jurisdiction."

And again in Farmer v. Evans, 111 Tex. 283, 233 S. W. 101, the same court held that a chattel mortgage duly filed and recorded in Oklahoma could not be enforced in Texas against the property removed to that state as against an innocent purchaser for value without notice in such state, though the removal was without the knowledge or consent of the mortgagee, and there was no negligence on his part in failing to ascertain the fact of removal. This holding was in answer to a certified question from the Court of Civil Appeals of the Seventh District.

We think the converse of the proposition must therefore necessarily be true, and hold on the authority of the above case that a chattel mortgage duly filed and recorded in Texas cannot be enforced against a person who acquires a lien against the property in the state of Illinois and who has no actual knowledge of the existence of the mortgage lien. Appellee argues in its brief that when the automobile was accepted for transportation, a right to a lien sprang into existence, and that the lien would only become complete when the contract of transportation was performed and the property delivered at the point of destination. With this argument we cannot agree. In our opinion the lien of appellant attached to the property when and where the appellant first began the performance of its contract relative thereto, and continued to exist until such time as it was dis-

charged by the payment of the charges, was waived by appellant, or became lost on account of some default on the part of appellant.

In accordance with the above views, the judgment of the trial court is reversed, and judgment here rendered for appellant for the sum of $210, with interest and costs.

Reversed and rendered.